IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02655-RPM-KLM

BMO HARRIS BANK N.A.,

     Plaintiff,

v.

IN & OUT LEASING, LLC,
IN & OUT CUSTOM HAULING, LLC, and,
MATTHEW FROST,

     Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Renewed Motion for Default Judgment** [#14][1] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C.COLO. LCivR 72.1(c), the Motion has been referred to the undersigned for recommendation. *See* [#15]. Plaintiff seeks entry of default judgment against Defendants In & Out Leasing, LLC, In & Out Custom Hauling, LLC, and Matthew Frost (collectively, "Defendants"). Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court entered default against Defendants on January 17, 2017. *See Entry of Default* [#9]. Defendants have not responded to Plaintiff's Complaint [#1] or the present Motion [#14], and the time for doing so has elapsed. The Court has reviewed the Motion, the entire case file, and applicable case law, and is

---

[1] "[#14]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

sufficiently advised in the premises. Accordingly, for the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#14] be **GRANTED**.

## I.  Background

### A.    Procedural Background

Plaintiff BMO Harris Bank N.A. ("Plaintiff") initiated this breach of contract lawsuit by filing the Complaint [#1] on October 26, 2016, against Defendants In & Out Leasing, LLC ("Borrower"), In & Out Custom Hauling, LLC ("Corporate Guarantor"), and Matthew Frost ("Personal Guarantor").  *Compl.* [#1] ¶¶ 1-4.  Defendants failed to respond to the Complaint.  On January 13, 2017, Plaintiff filed a Motion for Entry of Default [#9], to which Defendants failed to respond.  The Clerk of Court entered default against Defendants on January 17, 2017.  *See* [#10].  On February 1, 2017, Plaintiff filed an initial Motion for Default Judgment [#11], to which Defendants again failed to respond.  On July 14, 2017, the Court ordered Plaintiff to file a supplement that "directs the Court's attention to sufficient proof to support default judgment for money damages." *Minute Order* [#13].  On July 26, 2017, in lieu of filing a supplement, Plaintiff filed the present Motion [#14] and attached to it an affidavit and a declaration that provide details with respect to the alleged amount owed.  The affiant is Barbi Martin ("Martin"), who is employed by Plaintiff as a litigation specialist, *Martin Aff.* [#14-2], and the declarant is Aaron Chapin ("Chapin"), who is one of the principal attorneys representing Plaintiff in the present matter.  *Chapin Decl.* [#14-1]. Based on the filing of the Motion [#14], the original Motion for Default Judgment was denied as moot.  *Minute Order* [#16].

### B.     Factual Background

According to the Complaint,[2] on June 23, 2015, Borrower entered into a loan agreement ("First Agreement") with GE Capital Commercial, Inc. ("GECCI"), in which GECCI agreed to finance the purchase of equipment for Borrower's business and Borrower agreed to pay GECCI $90,835.68 pursuant to the terms of the First Agreement. *Compl.* ¶ 10; *Agreement* [#1-1]. That same day, Corporate Guarantor and Personal Guarantor also entered into personal guaranties with GECCI, which guaranteed full and timely performance of the First Agreement by Borrower. *Compl.* [#1] ¶¶ 11-12; *Exhs.* [#1-2, #1-3]. Under these guaranties, a default of the Borrower under the First Agreement is a default of the Corporate Guarantor and Personal Guarantor. *Compl.* [#1] ¶ 22; *Exhs.* [#1-2, #1-3]. On October 30, 2015, Borrower entered into a loan agreement ("Second Agreement") with Transportation Truck and Trailer Solutions, LLC ("TTTS"), in which TTTS agreed to finance the purchase of equipment for Borrower's business, and Borrower agreed to pay TTTS $82,274.40 pursuant to the terms of the Second Agreement. *Compl.* [#1] ¶ 13; *Agreement* [#1-4]. That same day, Corporate Guarantor and Personal Guarantor entered into personal guaranties with TTTS, which guaranteed full and timely performance of the Second Agreement by Borrower. *Compl.* [#1] ¶¶ 14-15; *Exhs.* [#1-5, #1-6]. Under these guaranties, a default of the Borrower under the Second Agreement is a default of the Corporate Guarantor and Personal Guarantor. *Compl.* [#1] ¶ 22; *Exhs.* [#1-5, #1-6]. Borrower granted both GECCI and TTTS security interests in the equipment, which is

---

[2] When determining whether to grant default judgment, the Court accepts allegations stated in the Complaint as true. *Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd,* No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *1 n.3 (D. Colo. June 8, 2015) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983)). Damages, however, must be supported with actual proof. *Keybank Nat'l Ass'n v. Nw. Prof'l Color, Inc.,* No. 15-cv-2180-WJM-CBS, 2016 WL 1446134, at *3 (D. Colo. Apr. 13, 2016).

referred to collectively as the "Collateral." *Compl.* [#1] ¶ 16. On December 1, 2015, GECCI and TTTS transferred and assigned to Plaintiff all of their rights, titles, and interests created under the First and Second Agreements and guaranties. *Compl.* [#1] ¶¶ 17-18; *Exhs.* [#1-7, #1-8].

On April 10, 2016, Borrower failed to make payments due to Plaintiff. *Compl.* [#1] ¶¶ 21, 24. He has failed to make all subsequent payments due under the First and Second Agreements. *Id.* Corporate Guarantor and Personal Guarantor have also failed to make payments despite demand by Plaintiff. *Id.* ¶ 25. After Defendants defaulted on their loans and guaranties, Plaintiff repossessed the Collateral. *Compl.* [#1] ¶¶ 32-33. On August 25, 2016, Plaintiff received the net proceeds from the sale of the Collateral. *Martin Aff.* [#14-2] ¶ 18. Pursuant to the First and Second Agreements, Borrower must pay: the principal amount due and owing, minus the net proceeds of the sale of the Collateral; interest on unpaid amounts at a default rate of eighteen percent per annum; late fees and other costs; all costs related to retaking, holding, preparing for sale, and selling the Collateral; and attorney's fees and costs. *Martin Aff.* [#14-2] ¶¶ 26, 27-29.

## II. Analysis

Pursuant to Fed. R. Civ. P. 55, default may enter against a party who has failed to appear or otherwise defend the case brought against him. Default was entered against Defendants on January 17, 2017, because Defendants failed to respond to the Complaint and all subsequent documents filed by Plaintiff. *See* [#10]; *see also* Fed. R. Civ. P. 55(a); *Mrs. Condies Salad Co., Inc. v. Colorado Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1218 (D. Colo. 2012). However, before proceeding with the entry of judgment, the Court must determine whether it has jurisdiction, whether the allegations of the Complaint

constitute a legitimate claim for relief, and whether damages can be ascertained. *Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015).

## A.    Jurisdiction

When a plaintiff seeks default judgment against a defendant who has failed to appear or otherwise defend, the Court must first determine whether it has jurisdiction over the subject matter and the parties. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997). "Whether jurisdiction exists must be determined from the facts alleged in the Complaint, without regard to conclusory allegations of jurisdiction." *Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK-KMT, 2012 WL 4856724, at *2 (D. Colo. Oct. 11, 2012) (citing *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)). "The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.'" *Penteco Corp. Ltd. P'ship–1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

### 1.  Subject Matter Jurisdiction

Plaintiff asserts that subject matter jurisdiction in this case is based on diversity of citizenship of the parties. *Compl.* [#1] ¶¶ 1-4. Federal courts have diversity jurisdiction over civil matters where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). The Complaint [#1] alleges that the amount due and owing as of October 5, 2016, not including attorney's fees and expenses or costs of collection, was $88,463.81. *Compl.* [#1] ¶ 34. Accordingly, the amount satisfies the jurisdictional requirement.

Plaintiff asserts that the parties are of diverse citizenship. *Compl.* [#1] ¶ 5. Plaintiff

alleges that it is a "national banking association with its main office, as set forth in its articles of association, located in Chicago, Illinois." *Compl.* [#1] ¶ 1. For the purposes of diversity jurisdiction, a national bank is a citizen of the state designated in its articles of association as the location of its main office. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Thus, according to the facts alleged in the Complaint, Plaintiff is a citizen of Illinois.

Plaintiff also alleges that Personal Guarantor is a citizen and resident of Colorado, *Compl.* [#1] ¶ 4, and that Borrower and Corporate Guarantor are limited liability companies ("LLCs") organized under the laws of Colorado, *id.* ¶¶ 2, 3. The Tenth Circuit Court of Appeals addressed the issue of citizenship of LLCs in *Siloam Springs Hotel, L.L.C. v. Century Surety Company*, and held that LLCs take the citizenship of all their members for purposes of diversity jurisdiction. 781 F.3d 1233, 1238 (10th Cir. 2015). Plaintiff alleges that Borrower's sole member is Matthew Frost, an individual resident and citizen of Colorado, *id.* ¶ 2, and that Corporate Guarantor's members are Matthew Frost and Ryan Shorb, who are both individual residents and citizens of Colorado, *id.* ¶ 23. Because Defendants are citizens of Colorado and Plaintiff is a citizen of Illinois, the diversity requirement of § 1332 is met. *See Siloam Springs Hotel*, 781 F.3d at 1238. Thus, the Court finds that it may exercise subject matter jurisdiction over this dispute because there is an adequate amount in controversy and complete diversity of citizenship exists.

### 2. Personal Jurisdiction

Personal jurisdiction over Defendants is also required before default judgment may be entered. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). In determining whether the Court has personal jurisdiction over Defendants, the Court must first address the

adequacy of service of process. *Reg'l Dist. Council*, 82 F. Supp. 3d at 1241. Since the Complaint names as Defendants an individual and LLCs, the Court analyzes service under Fed. R. Civ. P. 4(e) and 4(h). Rule 4(e)(2)(A) provides that an individual may be served by delivering a copy of the summons and the complaint to him personally. Rule 4(h)(1)(B) provides that an unincorporated association may be served by delivering the summons and complaint to the agent authorized to receive service of process. A private process server personally served Matthew Frost, in his individual capacity as Personal Guarantor and as a registered agent of both Borrower and Corporate Guarantor, with the Summons and Complaint on November 22, 2016, at Frost's home. *See Proof of Serv.* [#4, #5, #6]. Accordingly, the Court finds that Defendants were properly served in accordance with Fed. R. Civ. P. 4(e) and (h).

In reviewing personal jurisdiction on a motion for default judgment, the Court does not assert defenses on behalf of the non-moving party, but rather "exercises its responsibility to determine that it has the power to enter the default judgment." *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202 (10th Cir.1986) (citing *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 225 (10th Cir. 1979)). The plaintiff "need only make a prima facie showing [of personal jurisdiction] . . . if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773; *see also Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (explaining that the plaintiff's burden to show personal jurisdiction over defendant in the preliminary stages of litigation is light). Because Defendants reside or are located in the state of Colorado, *Compl.* [#1] ¶¶ 2-4, and because they were properly served in Colorado, the Court finds that the allegations of the Complaint are sufficient to

conclude that it has personal jurisdiction over Defendants. *See Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1033 (D. Colo. 2015); *United States v. Stock Asylum LLC*, No. 14-cv-01979-WJM-NYW, 2015 WL 638200, at *2 (D. Colo. Feb. 13, 2015).

## B. Default Judgment

### 1. Liability

Having found jurisdiction, the Court next considers whether Plaintiff is entitled to relief. After entry of default, the Court must consider whether the alleged facts constitute a legitimate cause of action. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-01114-RPM-MEH, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009); *Bixler,* 596 F.3d at 762. "Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation." *Reg'l Dist. Council*, 82 F. Supp. 3d at 1242. When determining whether the plaintiff is entitled to relief, the well-pled facts of the complaint are deemed to be true. *Id.* (citing *Dundee Cement Co.,* 722 F.2d at 1323); *see also Mrs. Condies Salad Co.*, 858 F. Supp. 2d at 1218. Undisputed facts set forth in affidavits and exhibits are also deemed to be true. *Reg'l Dist. Council*, 82 F. Supp. 3d at 1242; *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007).

Under Colorado law,[3] the elements of a breach of contract claim are (1) the

---

[3] The First and Second Agreements are silent with respect to choice-of-law. *Agreements* [#1-1, #1-4]. Because the cause of action arose in Colorado and Defendants are subject to personal jurisdiction in this district, the Court will therefore apply Colorado state law. *See GreenTree Transp. Co. v. Speedy Heavy Hauling, Inc.*, No. 10-cv-02657-JLK-KLM, 2011 WL 5834746, at *7 (D. Colo. Sept. 19, 2011); *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003) ("A federal court in a diversity case applies the choice of law principles of the state in which it sits.") (citations omitted).

existence of a contract between the parties, (2) performance by plaintiff, (3) failure to perform the contract by defendant, and (4) resulting damages to plaintiff. *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992). The Complaint alleges that a contract existed between Plaintiff and Defendants, *Compl.* [#1] ¶¶ 10-18; *Agreements* [#1-1, #1-4];[4] that Plaintiff has fully performed its contract obligations, *Compl.* [#1] ¶¶ 38, 43, 48; that Defendants have failed to make payments under the First and Second Agreements, *id.* ¶¶ 21, 24, 25; and that Plaintiff, under the terms of the First and Second Agreements, is entitled to damages in the amount of the principal due after acceleration, interest at the default rate, late charges, and other fees. *Id.* ¶¶ 23, 26-28; *Agreements* [#1-1, #1-4]. Accordingly, the Court finds that the well-pled allegations of the Complaint constitute a breach of contract, and respectfully **recommends** that the Motion [#14] be **granted**. *See Bixler,* 596 F.3d at 762; *Top Rank, Inc. v. Fey*, No. 08-cv-00480-RPM-KLM, 2009 WL 1384171, at *3 (D. Colo. May 15, 2009).

### 2. Relief

Default judgment cannot be entered until damages have been ascertained. *Top Rank, Inc.*, 2009 WL 1384171, at *3. "Actual proof must support any default judgment for money damages." *Keybank Nat'l Ass'n*, 2016 WL 1446134, at *3 (citing *Klapprott v. United*

---

[4] "Contract rights generally are assignable, except where assignment is prohibited by contract or by operation of law or where the contract involves a matter of personal trust or confidence." *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1052 (Colo. 1994). Under Colorado law, the rights of the assignee are subject to the terms of the agreement between the debtor and assignor. COLO. REV. STAT. § 4–9–404(a)(1). Defendants executed promissory notes and guaranties with lenders GECCI and TTTS. *Compl.* ¶¶ 10-16; *Compl. Exs.* [#1-#6]. On December 1, 2015, GECCI and TTTS transferred and assigned the rights, titles, and interests Guaranteed by the First and Second Agreements and Guaranties to Plaintiff. *Compl.* ¶¶ 17-18; *Ex.* [#1-7, #1-8]. Thus, the First and Second Agreements that were originally between Defendants and GECCI and Defendants and TTTS, are now, and were at the time the cause of action arose, between Plaintiff and Defendants.

*States*, 335 U.S. 601, 611-12 (1949)).  The Court may order default judgment with or without holding a hearing; however, it may only enter default judgment without a hearing where "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (quoting *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir.1983)).

Plaintiff seeks to recover the amount due and owing under the Agreements and the Guaranties (minus the proceeds from the sale of the Collateral) in the amount of $102,430.65, attorney's fees and costs in the amount $4,630.65, plus interest accruing from July 26, 2017, in the amount of $42.76 per day.  *Motion* [#14] ¶¶ 23, 25, 26.  Plaintiff, in the Motion [#14], relies on the calculations set forth in the Martin Affidavit and Chapin Declaration.  *Id.* ¶ 23, 25.  By the Court's calculation, however, the total amount due and owing under the Agreements and the Guaranties according to the Martin Affidavit, which is repeated in the Motion [#14], exceeds the correct amount by $1,500.[5]  Therefore, in the following sections, the Court uses the appropriate amounts to calculate Plaintiff's damages for the principal amount due, the interest accrued from August 25, 2016, to July 26, 2017, late fees, and attorney's fees and costs.  *Martin Aff.* [#14-2] ¶¶ 32, 34, 25, 26.

### i.    Principal Amount Due After Sale of the Collateral

Pursuant to the terms of the First and Second Agreements, on April 10, 2016 (the date Defendants defaulted on their loans), the principal amount was accelerated such that

---

[5]  Ms. Martin calculates the principal amount due, not including attorney's fees, as $102,430.55. *Martin Aff.* [#14-2] ¶ 37.  However, it appears to the Court that a mathematical error occurred in the Martin Affidavit upon which Plaintiff relied in seeking relief.  *Motion* [#14] ¶ 23.  The Martin Affidavit supports damages that total $100,930.55, not $102,430.55.  *Martin Aff.* [#14-2] ¶ 37 (providing incorrectly that $85,524.03 + $14,324.60 + $1,081.92 = $102,430.55).

the entire outstanding balance, including interest then owed, was calculated, totaling $136,456.52. *Motion* [#14] ¶ 18; *Martin Aff.* [#14-2] ¶ 25. Plaintiff subsequently took possession of the Collateral pursuant to the terms of the First and Second Agreements and sold the Collateral via Ritchie Bros. Auctioneers. *Motion* [#14] ¶ 22; *Martin Aff.* [#14-2] ¶ 17. Ritchie Bros. Auctioneers, an expert industrial auctioneer that operates forty-five permanent auction sites, sold the Collateral by advertising "the sale of the Collateral in print, digital, and other media," and offering the Collateral for auction. *Martin Aff.* [#2] ¶17. On August 25, 2016, Plaintiff received $61,780 in net proceeds for the Collateral after paying Ritchie Bros. Auctioneers its commissions and fees. *Martin Aff.* [#14-2] ¶ 18; *Martin Aff.* [#14-2], Exh. [#14-2].* Plaintiff calculates the amount due after the sale of the Collateral as follows: the proceeds from the sale of the Collateral ($61,780) were subtracted from the total due at default ($136,456.52). The repossession fee ($1,500) and interest from April 10, 2016, to August 25, 2016, ($9,347.51)[6] were then added to that amount, so that the principal amount due after the sale of the Collateral totals $85,524.03. *Martin Aff.* [#14-2] ¶¶ 28, 30, 32. The Court finds that the principal amount owed is mathematically ascertainable and supported by actual proof, which includes evidence that the Collateral was sold in the usual manner in a recognized market. *Exhs.* [#1-3, #1-6] at 1; *Martin Aff.*

---

[6] The interest accrued is calculated from the date of default on April 10, 2016, to the sale of the Collateral on August 25, 2016, at an interest rate of eighteen percent yearly. The Court notes that the interest rate totals provided in certain paragraphs of the Martin Affidavit are incorrect. *See Martin Aff.* [#14-2] ¶¶ 28, 32 (providing that $34.81 x 137 is $4,768.41 when it actually is $4,768.97 and using $4,578.86 when the correct amount is $4,578.54). The total pre-sale interest should be calculated as follows: ($34.81 per diem interest under the First Agreement) x (137 days) = $4,768.97; ($33.42 per diem interest under the Second Agreement) x (137 days) = $4,578.54; $4,768.97 + $4,578.54 = $9,347.51. However, despite the errors in the Martin Affidavit, the principal amount of $85,542.03 as provided in paragraphs twenty-two and twenty-eight, totals upon which the Motion [#14] relies, are correct.

[#14-2].  Accordingly, the Court **recommends** that Plaintiff be awarded the principal amount of $85,524.03.

### ii.    Interest

Plaintiff seeks to recover $14,324.60 in interest accrued on the principal from August 25, 2016, to July 26, 2017 (the date of filing the Motion), *Motion* [#14] ¶ 23; *Martin Aff.* [#14-2] ¶ 34, and any interest accrued in the amount of $42.76 per diem accrued since July 26, 2017.  *Motion* [#14] ¶ 26; *Martin Aff.* [#14-2] ¶ 33.  Pursuant to the First and Second Agreements, Defendants must pay a default interest rate of eighteen percent per annum on the principal amount.  *Agreements* [#1-1, #1-4] at 4, ¶ 5.2.  The per diem interest rate of $42.76[7] and the total amount accrued from August 25, 2016, to July 26, 2017, in the amount of $14,324.60[8] is mathematically ascertainable, correctly calculated, and supported by proof provided by Plaintiff.  Accordingly, the Court **recommends** that Plaintiff recover $14,324.60, plus $42.76 per day from July 26, 2017, until issuance of the Order on the Motion [#14].

### iii.    Late Fees

Plaintiff seeks recovery of late fees in the amount of $1,081.92.  *Motion* [#14] ¶ 17; *Martin Aff.* [#14-2] ¶ 36.  The Martin Affidavit states that the Agreements require the Borrower to pay late charges and other fees.  *Martin Aff.* [#14-2] ¶ 35.  More specifically, the Affidavit provides: "According to Plaintiff's books and records, late charges have accrued in the amount of $1,081.92 under the Agreements."  *Martin Aff.* [#14-2] ¶ 36.  While no further

---

[7]  The per diem interest amount is calculated as follows: ($85, 524.03 principal amount) x (.18 percent) x (360 days per year pursuant to the terms of the agreement) = $42.76.  *Martin Aff.* [#14-2] ¶ 33.

[8]  The total amount accrued from August 25, 2016, to July 26, 2017, is calculated as follows: ($42.76 per diem interest amount) x (335 days) = $14,324.60.

explanation or calculation of late fees is provided in the Motion [#14], these damages are ascertainable from the language of the Agreements, which state that late fees are calculated as five percent of the installment.[9]  *See Reg'l Dist. Council*, 82 F. Supp. 3d at 1241; [#1-1, #1-4] at 2.  Accordingly, the Court **recommends** that Plaintiff's request to recover $1,081.92 in late fees be **granted**.

### iv.    Attorney's Fees and Costs

"A party requesting an award of fees and costs bears the burden of establishing entitlement to the award and documenting the appropriate hours expended and hourly rates."  *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983).  A good faith effort must be made "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Id.* at 434; *Fed. Fruit & Produce Co.*, 2009 WL 765872, at *7.  "Generally, the starting point for any calculation of a reasonable attorney's fee is the 'lodestar,' that is, the number of hours reasonably expended multiplied by a reasonable hourly rate."  *Mrs. Condies Salad Co.*, 2012 WL 1431371, at *2.  The hourly rate sought should correspond to prevailing market rates in the relevant community for similar services by lawyers of comparable skill, experience, and reputation.  *Miracle Gash v. Client Servs., Inc.*, No. 12-cv-01426-LTB-MJW, 2013 WL 1130717, at *2 (D. Colo. Mar. 18, 2013).  "The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion."  *Mrs. Condies Salad Co.*, 2012 WL 1431371, at *2.

Plaintiff seeks to recover $4,000 in attorney's fees.  *Motion* [#14] ¶ 25*.*  Plaintiff's

---

[9]  The First Agreement provides that the monthly installment is $1,892.41. [#1-1] at 2.  Thus, 5% of the monthly installment is $94.62, and six months of missed payments equals $567.72.  The Second Agreement provides that the monthly installment is $1,714.05. [#1-4] at 2.  Thus, 5% of the monthly installment is $85.70, and six months of missed payments equals $514.20.

requested attorney's fees are based on a fixed, negotiated amount of $4,000. *Id.*; *Chapin*

*Decl.* [#14-1] ¶ 10. Pursuant to the First and Second Agreements, Defendants agreed to pay

Plaintiff "reasonable fees of any attorneys retained by [Plaintiff]." *Agreements* [#1-1, #1-4]

at 4 ¶ 5.2. Here, Plaintiff supports its request for reasonable attorney's fees with a detailed

declaration, which estimates that fourteen to eighteen hours were spent on this matter and

provides the rates and experience of attorneys involved. *Chapin Decl.* [#14-1] ¶¶ 10-12.

Plaintiff states the following related to the reasonableness of the attorney's fees requested:

Aaron Chapin, an associate with ten years of experience, who charged $525 per hour in

2016 and charged $550 per hour in 2017, spent six to eight hours analyzing documents,

advising Plaintiff, drafting the Complaint, compiling the exhibits, supervising the prosecution

of the matter, and engaging with attorneys from Senn Visciano with respect to this case;

Kelly Tibble, an associate with almost five years of experience, charged $375 per hour in

2016 and spent three to five hours drafting the motion for default judgment and supporting

affidavits with respect to this case; Charles Fuller, an associate who graduated from law

school in 2011, charges $240 per hour and spent five hours prosecuting Plaintiff's rights in

this matter. *Id.* It appears to the Court that the attorney rates are reasonable and

correspond to the relevant market, and that the hours worked by Mr. Chapin and Ms. Tibble

are not excessive, redundant, or unnecessary. However, it is impossible to determine

whether Mr. Fuller's work was excessive, redundant, or unnecessary because it is unclear

what tasks are involved in "prosecuting Plaintiff's rights in this matter." *Id.* But even if the

hours Mr. Fuller worked are not included in the calculation, the lodestar amount, calculated

using the lowest estimated rates provided, would total $4,275,[10] which is more than the actual requested attorney's fees of $4,000. Accordingly, the Court **recommends** that Plaintiff be awarded $4,000 in attorney's fees.

Plaintiff also seeks to recover $630.65 in costs and provides an affidavit and transaction record, which document the costs accrued in the present case. *Chapin Decl.* [#14-1] ¶ 11; *Chapin Decl.* [#14-1] at 7. Under the First and Second Agreements, Defendants are obligated to pay Plaintiff for the costs accrued in the present case. *Agreements* [#1-1, #1-4] at 4, ¶ 5.2 ( "Debtor shall pay to Lender. . . all other legal expenses incurred by Lender."). The costs include the initial filing fee of $400.00 paid on October 26, 2016 and three service fees totaling $230.65 paid on November 22, 2016. *Chapin Decl.* [#14-1] at 7. Thus, the Court **recommends** that Plaintiff recover $630.65 in costs.

### III. Conclusion

Based on the foregoing,

The Court respectfully **RECOMMENDS** that Motion [#14] be **GRANTED**, and that Plaintiff be awarded the principal amount of $85,524.03, interest accrued in the amount of $14,324.60 plus $42.76 per day from July 26, 2017 until issuance of the Order on the Motion [#14], attorney's fees and costs in the amount of $4,630.65, and late fees in the amount of $1,081.92.

BY THE COURT:

Dated: January 24, 2018

Kristen L. Mix
United States Magistrate Judge

---

[10] (($525 per hour for Mr. Chapin) x (6 hours)) + (($375 per hour for Ms. Tibble) x (3 hours)) = $4,275.